And we'll hear argument in our final matter today, Fraccola v. Grow, 16483. If I may say, I have a problem with hearing. I lost part of my hearing in the United States Army. Both the District of Court and Attorney General rest their opposition to my day in court on an unreal settlement agreement and a frivolous residing claim as found in the defendant's brief on page 3 that states, is Grow, a state court judge, immune from suit for so ordering a settlement agreement in a case over which he presided. And on page 16, it continues with, the settlement resolved both that case, meaning Playtime Boutique's case, and the case litigating involving first choice realty over which Judge Grow also presiding. That my day in court is being taken from me on the foundation of the District Court and the Attorney General that Judge Grow was presiding over a settlement agreement which is not correct. In the first instance, what District Court and AG with misleading claims as a settlement agreement, the Honorable Glenn T. Bruning, court acclaims, decides, and orders on June 17, 2013 at Appendix 14. As a result, the settlement that was placed on the record was akin to an agreement in principle requiring numerous documents to be prepared and executed in order to effect a complete resolution. Consequently, the theory of a settlement agreement never took place, as the Honorable Judge has said, until there was a lot more to be considered and a lot more documents to be addressed. Additionally, first choice realty was in a state of dissolution at that time, pursuant to the New York State Business Corporate Law, Section 1005, 6, and 7 statute, which the court has no latitude. It must honor that statute in full. Judge Grosso's order decides that a 50% interest shareholder can run with the assets of first choice realty without satisfying any of the creditors, including the Internal Revenue Service, for which there are now 10 years of tax returns due. Judge Grosso's order concerning a settlement agreement violates seven statutes. The documentary evidence will also prove beyond doubt Judge Grosso never presided over corporation first choice realty at any time, because only the parties to the two playtime actions can enter those actions, and first choice realty is not a party therein, playtime's two actions. As we look at Appendix 15, the action before Judge Grosso, playtime, both T, comma, Inc., against Phyllis Forcola and Hydrenia, first choice realty is not mentioned and not a party therein. And on page 74, again, the second action before Judge Grosso, playtime, both T, comma, Inc., versus Phyllis Forcola. Again, first choice realty is not mentioned. Consequently, Judge Grosso could not have jurisdiction. In order for the Attorney General to be successful, they would have to prove with documentary evidence that in confirming first choice realty was served with process to be a party to playtime's two actions on February 15, 2005. Process does not exist. So consequently, their theory, the theory of the lower court and the theory of the AG in that Judge Grosso had jurisdiction, he was presiding over a settlement agreement, does not stand on the record and does not stand with the documentary evidence. Thank you, Mr. Forcola. You've reserved one minute for rebuttal. I'm sorry? You've reserved one minute for rebuttal. You have one minute for rebuttal, so why don't you sit down. Good morning, Your Honor. The district court was correct to apply judicial immunity to this case. At the root of Mr. Forcola's claims is an allegation that a settlement that Justice Grosso, who is a stateman. Do you agree that the Rooker-Feldman doctrine also applies? I do, Your Honor. That's one of our alternative claims. So if the Rooker-Feldman doctrine applies, why do we need to get to judicial immunity? You don't, Your Honor. All right. We don't even get to judicial immunity. If Rooker-Feldman applies. That's correct, Your Honor. We present them as alternatives. This court could equally apply the Rooker-Feldman doctrine here, because of what Mr. Forcola is looking to do is invalidate not only the settlement that Justice Grosso ordered, but also the myriad state court decisions that have upheld the validity of the settlement. But isn't the Rooker-Feldman doctrine the first part of the analysis? Isn't that something that we should determine first? Because it's a matter of subject matter jurisdiction. Your Honor, we struggled with that when we were writing the brief. We found several cases that had determined that because an action failed to state a claim, it was unnecessary to reach Rooker-Feldman. And that's why we put it as an alternative. Even though it's jurisdictional, there have been courts that have declined to reach it just because Rooker-Feldman can at times be thorny, and we thought that judicial immunity was more straightforward. But to the extent that Rooker-Feldman is, in fact, a jurisdictional doctrine, this court certainly could apply Rooker-Feldman here and decline to reach the judicial immunity issue altogether. I'd like to make sense of some of the same cases that seem to review both judicial immunity and Rooker-Feldman. But you now agree that that's the first part of the analysis, and if the Rooker-Feldman doctrine applies, then that's the end of the analysis? That would be correct, Your Honor. Under Rooker-Feldman, neither the district court nor this court would be able to determine whether or not the settlement agreement was valid in the first place. Whether Mr. Fracola is seeking damages or whether or not he's seeking explicitly to avoid the settlement, a determination in his favor would necessarily require a determination by a federal court that the state court issued an invalid order, and therefore striking that order. Did the district court judge here dismiss with prejudice? Yes, Your Honor. And if the Rooker-Feldman doctrine applies and we determine that there was no subject matter jurisdiction in the first instance, was that appropriate, to dismiss it with prejudice? I would believe so, Your Honor. Why would you believe that? Because the dismissal for lack of subject matter jurisdiction would preclude him from coming into court and raising any claims to the extent. Coming into federal court. Coming into federal court, yes, Your Honor. But it wouldn't preclude him from going to state court. That would be a completely separate matter, Your Honor. We're talking about subject matter jurisdiction. We're talking about federal subject matter jurisdiction. That's correct. And as I understand, with prejudice, that would mean that if Mr. Fracola was to return into federal court again, he would be precluded. That's not what normally with prejudice is limited to. If I'm incorrect, I apologize, Your Honor. But a dismissal for lack of subject matter jurisdiction, even if it wouldn't prevent Mr. Fracola from going into state court again, I would just observe for the record that to the extent that Mr. Fracola says that he's looking for his day in court, he's had his day in court on about five separate occasions in the state courts. In this case. In this case. He has litigated the validity of the settlement repeatedly and state courts have determined that this settlement is, in fact, valid. So he's now. I mean, once as a matter of Rooker-Feldman, we are out of it. Isn't that for the state courts to determine? That's correct, Your Honor. And if this court would choose to apply Rooker-Feldman, the state would be certainly quite pleased with that. In that case, judicial immunity would be an alternative basis for affirmance. But we would ask this court to affirm the judgment here, dismissing this claim, whether it be on judicial immunity grounds or for lack of subject matter jurisdiction. Unless there are any other questions, I will rest on my filings. Mr. Fracola, you have one minute. There was not a settlement agreement. And there was not a presiding over an action by Judge Groh. What had happened here was that Judge Groh, after we determined we wanted to see if we can resolve our problems, discards the jury. There's no jury. We can't go back to court. He's caught. And what happened is that his way out now, his way out, is when Mr. Brindisi, opposing attorney, approaches him directly, slitters down the highway to go see Judge Groh, asks for a sole order. And then what the honorable judge, forget his name, said, there is no agreement. He attempts to force an agreement on us with his sole order that violates seven statutes. Thank you very much. We'll reserve decision. And I'll ask the clerk to adjourn court.